UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| MELODY WISELEY,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | ) | CASE NO. C11-1872-RSL-MAT<br><br>REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff Melody Wiseley proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REMANDED for further administrative proceedings.

/ / /

/ / /

/ / /

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1967.[1] She completed high school or obtained a GED, and previously worked as a stocker, cashier, and nursing assistant. (AR 23, 62, 166, 188.)

Plaintiff filed applications for SSI and DIB in October 2007, alleging disability beginning January 30, 2004. (AR 135-42.) Her applications were denied initially and on reconsideration, and plaintiff timely requested a hearing.

On November 25, 2011, ALJ John Bauer held a hearing, taking testimony from plaintiff and a vocational expert. (AR 31-69.) On April 16, 2010, the ALJ issued a decision finding plaintiff not disabled. (AR 14-25.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on September 10, 2011 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's

1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

lumbar strain, asthma, mood disorder, anxiety disorder, personality disorder, substance abuse disorder, and obesity severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff capable of performing light work, but limited to occasional climbing of stairs, ladders, ropes, and scaffolds, occasional balancing and stooping, unable to crawl, and needing to avoid vibrations, excessive fumes, odors, and gases. The ALJ further found plaintiff limited to simple and routine tasks, some complex tasks, and only occasional contact with the public. With that assessment, the ALJ found plaintiff unable to perform any past relevant work.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Considering the Medical-Vocational Guidelines and with the assistance of the vocational expert, the ALJ found plaintiff capable of performing other jobs, such as work as a bench assembler and basket filler.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues[2] the ALJ failed to properly consider the medical opinions of five examining physicians, failed to properly evaluate her credibility, and rendered incomplete hypothetical questions to the vocational expert. She requests remand for further administrative proceedings. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

<u>Medical Opinions</u>

Plaintiff first takes issue with the ALJ's rejection of opinions from four examining physicians:

> The record contains psychological evaluations, dated February 2007, September 2007, August 2008, and June 2009 from psychologists Kevin Morris, PsyD, Don Schimmel, PhD, Geordie Knapp, PsyD, and Dana Harmon, PhD, respectively, in connection with the claimant's applications for benefits from Washington State Department of Social and Health Services ("DSHS"). These evaluators stated that the claimant was markedly to severely limited in several areas, including the ability to perform routine tasks, exercise judgment, and relate appropriately to co-workers and supervisors. Dr. Morris even stated that there was no indication of alcohol or drug abuse, though there had been self-medication in the past, based on the claimant's report. Dr. Morris then wrote that alcohol and drug abuse did not exacerbate the claimant's other diagnosed conditions and that the claimant did not acknowledge the existence of

---

2 Plaintiff's Opening Brief contains a lengthy statement of testimonial evidence and summary of documentary medical evidence, consisting of nearly half the brief. The Court has full access to the administrative record and all the hearing exhibits. A lengthy summary of the record by either party serves no useful function, and violates this Court's scheduling order. (Dkt. 11 at 2 ("**The parties shall not include a lengthy recitation of background facts or medical evidence. Rather, a discussion of the relevant facts should be included in the context of specific assignments of error.**") (emphasis in original).)

> alcohol and drug abuse, because the claimant told him that she was not using alcohol. Dr. Morris opined that the claimant's cognitive limitations were most likely not the result of alcohol or drug abuse. Similarly, Drs. Knapp and Harmon wrote that alcohol and drug abuse did not exacerbate the claimant's other diagnosed conditions and that the claimant's cognitive limitation[s] were most likely not the result of alcohol or drug use. Dr. Harmon added that the claimant did not acknowledge the existence of alcohol or drug abuse, and that the claimant's recovery included numerous re-lapses. These opinions are inconsistent with the overall objective evidence in the record, including the claimant's own statements about her routines during the day and her testimony at the hearing regarding her continued alcohol consumption. While these DSHS evaluators stated that the claimant had been in early or partial remission on different occasions, the claimant testified that she never had significant clean and sober time during any of her treatment programs. Accordingly, little weight can be given to these DSHS opinions.

(AR 20-21; internal citations to AR 277-88 (Dr. Morris); AR 309-14 (Dr. Schimmel); AR 442-47 (Dr. Knapp); AR 449-52 (Dr. Harmon); and AR 169-83 (function report).) Plaintiff also challenges the ALJ's assessment of the opinions of examining physician Dr. David Jarvis:

> In February 2008, the claimant met with consultative examiner and psychiatrist, David Jarvis, MD, who reviewed the claimant's records and conducted an interview and mental status examination. Dr. Jarvis noted that the claimant sat easily and comfortably in her chair during the interview, and that the claimant did not exhibit any spasms, tremors, or unusual mannerisms. Dr. Jarvis also noted that the claimant had a close relationship with her mother and had been living with her for several years, along with the claimant's adult daughter and two nieces. The claimant told Dr. Jarvis that her daily routine consisted of washing her face, brushing her teeth, drinking coffee, eating breakfast and watching television. She added that she sometimes did sewing, crocheting and crafts projects. The claimant also told Dr. Jarvis that she sometimes cooked, but because she lived in her mother's home, she deferred to her mother with regard to what happened in the kitchen. Based on the results of the mental status examination, Dr. Jarvis found that the claimant was mildly depressed, but that her affective responses were congruent with her thought content, which was abundant, although scattered at times. There was no evidence of unusual or delusional thought content, although Dr. Jarvis found that the claimant's answers to questions were vague. Dr. Jarvis found that the claimant's remote and recent past memory, immediate recall and calculation were intact, but that the claimant's attention and concentration were impaired, based on her reverse math calculations and delayed recall. Dr. Jarvis also found that the claimant

> did not have any impairment in abstract thinking. He stated that the claimant's insight and judgment were impaired, but provided no information or examples regarding this finding. Overall, Dr. Jarvis concluded that the claimant's polysubstance abuse, combined with low mood and motivation, and high disability conviction made the claimant severely limited in her ability to seek and persist with employment. Dr. Jarvis' opinion is internally inconsistent with the claimant's activities of daily living and objective results of the mental status examination, in which the claimant did fairly well, albeit slower on concentration tasks. His opinion is also inconsistent with the overall objective medical evidence. Specifically, DDS psychologists, Drs. Clifford and Eather, who looked at the entire medical evidence of record, including this one, and found that the claimant could perform work consisting of simple, repetitive tasks with occasional interaction with the general public. Accordingly, little weight can be given to Dr. Jarvis' opinion.

(AR 21-22; internal citations to AR 342-48.) For the reasons discussed below, the Court concludes that the ALJ erred in his assessment of the opinions of these examining physicians.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id*. at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) and *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)). However, "the report of a

nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all other evidence* in the record.'" *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995) (quoting *Magallanes*, 881 F.2d at 752 (emphasis in original)).

In this case, the ALJ rejected the opinions of five examining physicians in favor of opinions rendered by non-examining physician Dr. Thomas Clifford, who completed a Psychiatric Review Technique Form and Mental RFC Assessment form in February 2008 (AR 351-67), and nonexamining physician Dr. Bruce Eather, who affirmed Dr. Clifford's evaluation in August 2008 (AR 437). The record does not support this decision.

As reflected above, the ALJ rejected the opinions of the DSHS physicians as inconsistent with the objective evidence in the record as a whole. (AR 21.) Yet, all five examining physicians rendered consistent opinions. Mental health practitioner Akiko Suzuki also rendered opinions consistent with those offered by the examining physicians. (AR 543-46 (November 2009 report noting Suzuki had seen plaintiff on seven occasions since July 2009, and opining that plaintiff had difficulty with attention and concentration, struggled with simple instructions, was easily distracted, struggled with social interaction/social skills, became easily offended, and exhibited significant levels of anxiety with people).)[3] Other documents further detract from the ALJ's depiction of the record. (*See*, *e.g.*, AR 326 (August 2006

---

3 The ALJ noted that Suzuki's opinion was "notably absent of any references to the claimant's continued use of alcohol or relapse from treatment[,]" and found it "inconsistent with the overall objective evidence in the record, including the opinions offered by DDS psychologists[.]" (AR 22-23.) He gave the opinion little weight. (*Id*.) As Suzuki is an "other source" pursuant to Social Security regulations, the ALJ needed only to address and explain the weight given to the opinion. 20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e), and Social Security Ruling (SSR) 06-03p. Also, plaintiff did not raise a separate challenge to the ALJ's assessment of this opinion. However, given the consistency of Suzuki's opinions with those proffered by the examining physicians, reassessment of all of the medical evidence relating to plaintiff's mental impairments is in order.

physician note stating plaintiff "needs to be evaluated and treated by a psychiatrist for mild psychosis, possible bipolar disorder, and substance abuse."); AR 290-91 (March 2007 notes from mental health practitioners stating plaintiff presented "depressed mood most days, some manic phases, irritability, easily angered, diminished sleep and isolation[,]" "appeared weepy most of the sessions[,]" and "had difficulty setting goals"; labeling plaintiff as chronically mentally ill); AR 298-99 (October 2006 report from examining physician Dr. Fran Koehler, assessing plaintiff as presenting "with symptoms suggestive of bipolar II disorder, currently depressed but with a very positive history of response to Depakote"; stating: "Her symptoms have been complicated by substance abuse over the years though this is currently under much better control.");[4] AR 489-512 (2009 counseling records discussing ongoing mental health symptoms).) As such, the ALJ's assertion of inconsistency with the objective evidence of record lacks the support of substantial evidence.

Nor does the Court find persuasive the ALJ's assertion that the opinions of the DSHS physicians were inconsistent with plaintiff's statements regarding her daily activities. At hearing, plaintiff testified she could not focus on half-hour television shows, has a lot of help from her mother around the house, misses medical appointments, stays in bed for five or more days at a time, goes a week or more without taking showers, does not sleep well, experiences

4 Although Dr. Koehler did not assess any limitations, the ALJ's failure to mention this report is arguably problematic. The report appears relevant to the correct diagnosis of plaintiff's mental impairments. The ALJ stated that, although plaintiff "alleged that she has a bipolar disorder," he found her symptoms "better addressed by the diagnosis of mood disorder, not otherwise specified [(NOS)]." (AR 17.) Dr. Koehler found plaintiff's symptoms suggestive of bipolar II, Drs. Schimmel, Morris, and Knapp rendered diagnoses of Bipolar disorder, and Dr. Jarvis diagnosed mood disorder NOS "(possible bipolar II)[.]" (AR 278, 299, 310.) Even reviewing physician Dr. Clifford, while assessing plaintiff with a mood disorder NOS, indicated a rule out biopolar II disorder diagnosis. (AR 354.) Given the number of physicians who diagnosed plaintiff with bipolar disorder, or suspected the diagnosis, the ALJ should, or remand, further consider this issue and the possible need to further develop the record.

frequent mood swings, and leaves the house maybe once weekly. (AR 52-60.) As discussed further below, while function reports and other records reflect some activities, they remain very limited in nature, such as: performing personal hygiene tasks; preparing simple meals for herself; performing basic household tasks, such as dishwashing and limited house cleaning; shopping for groceries twice a month and for clothing when needed; daily phone calls with friends when she feels able; and hobbies such as crocheting, sewing, watching television and movies, and taking walks in the summer. (AR 169-83, 205-12, 225-38, 345-46.)

The record also does not support an inconsistency between the reports from the examining physicians and plaintiff's statements regarding her alcohol consumption. In addition to conceding her history and ongoing problems with alcohol, as well as her lack of success in treatment programs, plaintiff testified to periods of sobriety, including a five- to six-month period without a drink. (AR 45-47.) She also testified that she continued to experience problems with her mental health during that time period. (AR 49.) This testimony is not inconsistent with the reports from the examining physicians, who noted early partial or full remission at the time of the examinations, meaning a period of sobriety lasting at least one month. *See* Diagnostic and Statistical Manual of Mental Disorders 195-96 (4th ed. 2000). Moreover, Dr. Morris repeatedly noted his reliance on plaintiff's report as to her alcohol and drug usage (AR 278-80), while Dr. Knapp noted plaintiff was in the midst of treatment and described their open discussion of plaintiff's history of alcohol abuse/dependence (AR 444-46), and Dr. Harmon took into consideration plaintiff's long history of alcohol use, treatment, and relapses, as well as her inability to "achieve a stable, sustained abstinence from alcohol." (AR 449-52). All of those physicians nonetheless considered plaintiff disabled without

consideration of her problems with alcohol. (AR 278 (Dr. Morris described plaintiff's mental health diagnoses and her drug and alcohol abuse as "Interactive/self-medication in past[]"); AR 444 (Dr. Knapp opined that none of the diagnosed conditions were likely caused by alcohol or drug abuse: "None – Bipolar disorder & PTSD evidence in childhood. Alcohol use did not begin until teens. Co-occurring disorders."); AR 451 (Dr. Harmon: "Melody would benefit from ongoing drug/alcohol treatment, with a focus on relapse prevention, but she would remain disabled by her mental health difficulties."; "Melody's depression and PTSD seem clearly distinguishable from her alcoholism. She struggled with depression and anxiety as a child, well before she was drinking, and she has continued to be disabled by her mental health difficulties even during times of a stable, sustained abstinence."))

The ALJ also notably failed to discuss Dr. Schimmel's report in any detail. That examining physician diagnosed, *inter alia*, alcohol dependence in early partial remission, noted plaintiff's report that she last used alcohol two weeks prior, and indicated that drug or alcohol abuse "<u>seriously</u>" exacerbated plaintiff's other diagnosed conditions. (AR 310-11 (emphasis in original).) He also assessed several severe cognitive limitations, opined that those limitations were not most likely the result of alcohol or drug abuse, and noted: "Ms. Wisely appeared unstable and vulnerable. I can't imagine her holding any kind of job." (AR 311-12.)

The ALJ's rejection of Dr. Jarvis's opinions fails for the same reasons, as his opinions do not appear inconsistent with either plaintiff's reported activities of daily living or with the overall objective medical evidence of record. Nor does a review of the report from Dr. Jarvis otherwise reasonably support the ALJ's conclusion of internal inconsistency. While

acknowledging plaintiff was "slower on concentration tasks[]"in the mental status examination conducted, the ALJ's conclusion that plaintiff "did fairly well[]" is difficult to reconcile with other findings, including the following: plaintiff's observable mood as "mildly depressed and anhedonic"; her spontaneous speech as "very abundant and often scattered or vague"; her responses to questions as "usually tangential[,]" requiring she be asked again "at which point her answers were often vague and global"; and the conclusions that her attention, concentration, insight, and judgment were all impaired. (AR 346-47, emphasis removed.) Additionally, while the ALJ contended Dr. Jarvis provided no information or examples to support his finding as to impaired insight and judgment, Dr. Jarvis followed up this finding by stating plaintiff had a "[h]istrionic frame of reference[,]" and subsequently stated: "Her frame of reference is full of 'things happening' and her being 'out of control' or 'not in control.'" (AR 347-48.) It should also be noted that the report from Dr. Jarvis is lengthy and extremely detailed; that, while conceding it was "not known[]" whether plaintiff's mood problems would continue absent drugs and alcohol, he opined plaintiff "would probably continue to have significant problems interpersonally and in coping with ordinary stresses because of personality disorder."; and that his assessment of severe limitations was based on the "combination of active alcohol and cocaine abuse, mood and anxiety disorders, together with significant personality disorder, with low mood and motivation, low frustration tolerance, anger dyscontrol, poor attention and concentration, and high disability conviction[.]" (AR 347-38.)

Given all of the above, the ALJ's decision to reject the opinions of the examining physicians does not have the support of substantial evidence. The ALJ failed to provide specific and legitimate reasons for rejecting those opinions, and erred in relying on the contrary

opinions of nonexamining physicians.

Additionally, while neither party addresses the issue, it would appear that the ALJ should have conducted a drug abuse and alcoholism (DAA) analysis. 42 U.S.C. § 423(d)(2)(C) (a claimant is not entitled to disability benefits "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."); 20 C.F.R. §§ 404.1535, 416.935 ("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."; the "key factor" in this determination is whether an individual would still be found disabled if he or she stopped using drugs or alcohol). Finally, although also not addressed by the parties, the ALJ arguably perceived an ambiguity in the opinions of the examining physicians' opinions as related to the issue of plaintiff's alcohol use, which could have created a duty to further develop the record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered.") (internal quotation marks and quoted sources omitted) and *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.") For this reason, and for the reasons stated above, the ALJ should reconsider the medical evidence of record as related to plaintiff's mental impairments on remand.

Credibility

In assessing credibility, an ALJ must first determine whether a claimant presents

"objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Given presentation of such evidence, and absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Id*. *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

In finding a social security claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ found plaintiff's medically determinable impairments could be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent inconsistent with the assessed RFC. He explained:

> Despite the claimant's assertions that she is unable to work because of mental

> and physical impairments, the record shows that she is capable of numerous activities of daily living, without the assistance of others. The claimant stated that her conditions do not affect her ability to dress, bathe, feed herself or perform other personal hygiene tasks. She added that she is able to prepare simple meals for herself at breakfast, lunch and dinner and can perform basic household chores, such as dish washing and limited house cleaning. The claimant also wrote that she is able to go outside to stores to shop for groceries and clothing and reported that she takes walks in the summer. She also stated that she talks on the phone with friends everyday when she feels she can. The claimant reported that she also enjoys sewing, making seat cushion covers and crocheting. Regarding physical limitations, the claimant testified that five pounds was almost too much for her to lift, yet she later testified that when she bought alcohol she would buy 10 cans at a time, which is easily over 5 pounds and likely over 10 pounds.
>
> It appears that many of the claimant's social and concentration problems are due to ongoing substance abuse. There is evidence that the claimant was fired from a job due to her alcohol problems. At the hearing, the claimant testified that she has been through alcohol treatment programs, but that she did not have any clean and sober time during those treatment programs. She told consultative examiner, David Jarvis, MD, that she used cocaine and alcohol as soon as she finished impatient treatment in January 2008. The claimant further testified that she continues to drink alcohol, despite her probationary status for a DUI charge. The claimant stated that she did not have a driver's license, and she told Dr. Jarvis that it had been taken away. The undersigned has inferred that she does not have a driver's license due to her DUI charge. Upon further questioning, the claimant admitted that she had been in jail numerous times over the past five years, due to drinking-related assaults and that she had smoked marijuana three weeks prior to the hearing. Overall, the activities reported by the claimant are inconsistent with the claimant's alleged level of limitations due to mental and physical impairments.

(AR 20.) For the reasons stated below, the ALJ's credibility assessment should be reconsidered on remand.

The ALJ did not fully present plaintiff's description of her activities. For example, plaintiff indicated she did not go outside her home alone, that her mom drove her to her appointments, that she made simple meals, needing little preparation (such as dry cereal and milk, sandwiches, and canned soup), that she performed house tasks "a little at [a] time[,]" that

her shopping trips for groceries occurred twice monthly and for clothing "once in a while only when needed[,]" and that her ability to engage in her hobbies and interests were limited by her inability to sit too long. (AR 175-82.) It is also notable that two of the function reports in the record were completed by plaintiff's mother, who explained: "She has a problem [concentrating] a short period of time, gets upset if she does not understand a question." (AR 182.)

Moreover, as stated above, plaintiff's activities of daily living, even as described by the ALJ, appear to be quite limited. "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan*, 260 F.3d at 1049 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). *See also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.") (cited sources omitted); *Fair*, 885 F.2d at 603 ("Many home activities are not easily transferable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits). The ALJ here placed undue significance on plaintiff's limited activities in finding her less than fully credible.

In addition, while raising some valid considerations, the ALJ's reliance on plaintiff's alcohol use and history of abuse as a basis for the credibility finding is troubling. Plaintiff

appears to have been generally, including at the hearing, quite candid about her history of and ongoing struggles with alcohol abuse. The ALJ recognized plaintiff's substance abuse disorder as severe, but essentially used that severe impairment as a basis for doubting her credibility. He also did so without engaging in a DAA analysis and without properly considering the medical evidence of record. This issue requires further consideration on remand.

Finally, the above-described errors cannot be deemed harmless. The Commissioner avers that the ALJ also, in finding plaintiff less than fully credible, relied on inconsistency between her allegations and the objective medical evidence. Although that inference can be made through a reading of the ALJ's decision in full, the ALJ did not state that such inconsistency served as a basis for his credibility finding; instead, he discussed this factor as a basis for rejecting the medical opinions favorable to plaintiff and for favoring the opinions of the nonexamining physicians. (*See* AR 20-23.) In any event, in addition to the fact that the credibility assessment could not be supported based alone on a lack of objective medical evidence support, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 96-7p, the ALJ did not, as discussed above, properly support his conclusion regarding the objective medical evidence in this case. For this reason, and for the reasons stated above, plaintiff's credibility should be reconsidered on remand.

<u>Hypothetical Questions to Vocational Expert</u>

Plaintiff argues that the ALJ's hypotheticals to the vocational expert were incomplete based on the deficiencies in the assessment of the medical evidence and her credibility. As argued by plaintiff, the errors identified above call into question both the ALJ's RFC

assessment and the hypotheticals proffered to the ALJ. *See*, *e.g.*, *Lewis v. Apfel*, 236 F.3d 503, 517-18 (9th Cir. 2001) ("Hypothetical questions asked of the vocational expert must 'set out all of the claimant's impairments.' If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.") (quoting *Gamer v. Secretary of Health and Human Servs*., 815 F.2d 1275, 1278, 1279 (9th Cir. 1987)). The ALJ should, therefore, reconsider those aspects of the sequential evaluation process on remand.

**CONCLUSION**

For the reasons set forth above, this matter should be REMANDED for further proceedings. A proposed order accompanies this Report and Recommendation.

DATED this 7th day of August, 2012.

Mary Alice Theiler
United States Magistrate Judge